IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HELICOPTER CONSULTANTS OF MAUI, INC. d/b/a BLUE HAWAIIAN HELICOPTERS, *et al.*, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 3:08-CV-0024-N |
| THALES AVIONICS INC., *et al.*, | §<br>§ | |
| Defendants. | §<br>§ | |

## ORDER

This Order addresses Defendants Eurocopter, S.A.S. ("Eurocopter") and American

Eurocopter Corporation's ("AEC") motion for summary judgment [60].  For the reasons

provided below, the Court grants the motion in part.

### I. THE HELICOPTER ACCIDENT AND RESULTING CLAIMS

This action arises out of a helicopter accident.  On June 5, 2006, a Eurocopter EC 130

B4 aircraft (the "helicopter") operated by Plaintiff Helicopter Consultants of Maui, doing

business as Blue Hawaiian Helicopters[1] ("Blue Hawaiian"), crashed during an aerial tour of

the Hawaiian islands.  The accident injured the pilot, five passengers, the helicopter, and a

leased Turbomeca engine installed in the helicopter.

---

[1]Plaintiff National Union is the insurer for, and is proceeding as subrogee to, Blue
Hawaiian.  The Court refers to the plaintiffs collectively as "Blue Hawaiian."

### A. Overview of the Transaction

Defendant Eurocopter, a French entity with its principal place of business in France, manufactured the helicopter and sold it to Defendant AEC, a Delaware corporation with its principal place of business in Texas. AEC, in turn, sold the helicopter to Plaintiff Blue Hawaiian, a Hawaii corporation that offers aerial tours of the Hawaiian islands, coastline, and surrounding ocean.

### B. The Agreement Between Blue Hawaiian and AEC

Blue Hawaiian purchased the helicopter from AEC about five and a half years before the accident. David Chevalier, Blue Hawaiian's President, signed a purchase agreement, contract no. V-3490 (the "helicopter purchase agreement"), for the helicopter in January of 2001. Defs.' App. to Mot. for Summ. J. at 9-10 [60-4]. The first page of the helicopter purchase agreement indicated above the signature line: "This order is subject to the terms and conditions set forth on the attached hereof [sic] except as modified herein"; and "NOTE: WARRANTY APPLICABLE IS SET OUT IN PARAGRAPH 4 OF TERMS AND CONDITIONS HEREOF." *Id.* The terms and conditions page included an express warranty, which limited AEC's liability to repair or replacement of defective parts. *Id.* at 12. It expired at the earlier of 1000 flying hours or 24 months after delivery of the helicopter. *Id.* In bold, capital letters, the terms and conditions attachment stated:

> **THIS WARRANTY IS MADE EXPRESSLY IN LIEU OF (i) ALL OTHER WARRANTIES INCLUDING, BUT NOT LIMITED TO, STATUTORY, EXPRESS OR IMPLIED (INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE) AND (ii) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN CONTRACT OR TORT, INCLUDING PRODUCT**

**LIABILITIES BASED ON STRICT LIABILITY OR NEGLIGENCE, ACTUAL OR IMPUTED. THE RIGHTS AND REMEDIES PROVIDED HEREIN ARE EXCLUSIVE IN CONNECTION WITH THE SALE OF SELLER'S PRODUCT(S) AND THE STATED EXPRESS WARRANTY PROVIDED HEREIN IS IN LIEU OF ALL LIABILITIES OR OBLIGATIONS OF SELLER FOR DAMAGES OF ANY TYPE INCLUDING, BUT NOT LIMITED TO, ALL INCIDENTAL OR CONSEQUENTIAL DAMAGES, AND ALL LOSS, DAMAGE OR EXPENSE ARISING OUT OF OR IN CONNECTION WITH THE USE, LOSS OF USE OR PERFORMANCE OF SELLER'S PRODUCTS, AND DAMAGES FROM ANY OTHER CAUSE EXCEPT AS SPECIFICALLY CONTAINED IN THIS WARRANTY CLAUSE.**

*Id*. at 12.  The parties negotiated various amendments to the helicopter purchase agreement over the next five months, but left the warranty disclaimer and limitation of liability provisions untouched.

Blue Hawaiian assigned its rights and interests in the purchase agreement to Nevada Helicopter Leasing ("NHL"), a third party helicopter leasing company also managed by David Chevalier.  *Id.* at 23.  On June 20, 2001, Chevalier affirmed that he received the helicopter on behalf of NHL and that it conformed "to the requirements of Purchase Agreement V-3490, dated January 19, 2001, and all amendments thereto." *Id.* at 28.  The parties specified a warranty start date of August 6, 2001.  *Id.*  NHL then leased the helicopter back to Blue Hawaiian, which was operating it at the time of the accident.  Compl. at 6-7 [1].

### *C. Blue Hawaiian's Claims Against AEC and Eurocopter*

Blue Hawaiian now asserts breach of warranty, negligence, and product liability claims against Eurocopter and AEC, all arising out of the June 5, 2006 accident.  It seeks to recover damages for the fair market value of the helicopter, loss of use, lost profits, and the

amount of any settlements, judgments, payments, attorneys' fees, costs or expenses arising from third-party claims against it.

### D. The Instant Summary Judgment Motion

AEC and Eurocopter move for summary judgment on four grounds. First, AEC seeks summary judgment because the helicopter purchase agreement bars all of Blue Hawaiian's breach of warranty and tort claims. Second, both seek summary judgment on Blue Hawaiian's breach of warranty claims because they are beyond the four-year statute of limitations established in Section 2.275 of the Texas Business and Commerce Code. Third, both seek summary judgment on Blue Hawaiian's tort claims for the loss of the helicopter because the economic loss rule precludes them.[2] Finally, both seek summary judgment on Blue Hawaiian's request for declaratory relief because it is redundant. However, before the Court can address these arguments, it must determine which law applies to Blue Hawaiian's claims.

## II. CHOICE OF LAW

In diversity cases, federal courts apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hartford Under-writers Ins. Co. v. Foundation Health Servs., Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). In Texas, courts apply the "most significant relationship" test to determine choice of law issues. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). This analysis applies to each

---

[2]AEC and Eurocopter do not argue that the economic loss rule precludes Blue Hawaiian's tort claims for personal injury or damage to "other property."

ORDER – PAGE 4

claim or issue individually.  *Id.*  However, if no conflict of law exists – that is, if there is no

difference between the laws of the competing forums on the relevant issues – the Court need

not decide which state's law applies.  *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*,

271 S.W.3d 228, 231 (Tex. 2008) (citing *Compaq Computer Corp. v. Lapray*, 135 S.W.3d

657, 672 (Tex. 2004)); *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377 (Tex.

App. – Fort Worth 2003, pet. denied) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d

414, 419 (Tex. 1984)).

      Although the parties agree that Texas law applies to Blue Hawaiian's breach of

warranty claims, they suggest that either Texas or Hawaii law applies to its negligence and

product liability claims.  However, neither party argues that the laws of Texas and Hawaii

conflict on any issue relevant to their claims or defenses.  The Court notes that the laws of

the two states are substantially similar on the tort issues in this case.  *Compare Mid Continent*

*Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 312-13 (Tex. 1978)

("In transactions between a commercial seller and commercial buyer, when no physical

injury has occurred to persons or other property, injury to the defective product itself is an

economic loss governed by the Uniform Commercial Code."), *and Ass'n of Apt. Owners v.*

*Venture 15, Inc.*, 115 Haw. 232, 285 (Haw. 2007) (citing *In State ex rel. Bronster v. United*

*States Steel Corp*., 82 Haw. 32, 39 (1996) ("[A] cause of action in products liability will not

lie where a plaintiff alleges a purely economic loss stemming from injury only to the product

itself.")).  Thus, the Court need not decide which state's law applies.  The Court cites, as do

the parties, authorities from Texas and the Fifth Circuit in deciding whether summary judgment is appropriate.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, courts need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to

satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

### III. THE HELICOPTER PURCHASE AGREEMENT BARS ALL OF BLUE HAWAIIAN'S CLAIMS AGAINST AEC

The Court finds that the warranty disclaimer and limitation of liability provisions contained in the terms and conditions attachment to the helicopter purchase agreement apply to Blue Hawaiian and bar all of its claims against AEC.

### A. The Warranty Disclaimer and Limitation of Liability Provisions Apply

Blue Hawaiian contends that, because AEC cannot prove that it provided a copy of the terms and conditions attachment to Blue Hawaiian at the time of signing, the warranty disclaimer and limitation of liability provisions do not apply.[3] The Court disagrees. "A person who signs a contract is presumed to have read and understood the contract and to have fully comprehended its legal effect, unless he establishes fraud in the inducement or mental incapacity." *In re Raymond James & Associates, Inc.*, 196 S.W.3d 311, 318-319 (Tex. App. – Houston [1st Dist.] 2006, no pet.) (citing *Nguyen Ngoc Giao v. Smith & Lamm*, 714 S.W.2d 144, 146 (Tex. App. – Houston [1st Dist.] 1986, no writ)). This includes terms that are incorporated into a contract by reference. *In re Lyon Fin. Svcs., Inc.*, 258 S.W.3d 228, 232 (Tex. 2008) (citing *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007)). Texas courts have found that such terms are binding even where a signer did not receive a copy of the referenced document. *See U.S. ex rel. Cassaday v. KBR, Inc.*, 590 F. Supp. 2d 850, 855 (S.D.

---

[3]Chevalier does not recall receiving a copy of the attachment and could not locate one in Blue Hawaiian's files. Pls.' App. to Resp. to Defs.' Mot. for Summ J. at 3 [68-3] .

Tex. 2008) (relying on Texas law: "[T]o the extent Cassaday argues the arbitration provision is unconscionable because KBR did not give him a copy of the KBR Dispute Resolution Program rules . . . the Court finds this argument is unavailing and without merit."); *Raymond James*, 196 S.W.3d at 318-19 (finding that an arbitration provision in an incorporated document bound account holders even though they never received a copy); *Satre v. Dommert*, 184 S.W.3d 893, 898 (Tex. App. – Beaumont 2006, no pet.) ("Dommert's argument that she did not receive or sign the Client Agreement itself is without merit. An unsigned document containing an arbitration clause, such as the unsigned client agreement in this case, may be incorporated by reference into another signed document. Also, a party's failure to read a portion of a contract's provisions is no defense to the enforcement of the contract's terms.") (internal citation omitted).

Here, the signed first page of the helicopter purchase agreement incorporated the terms and conditions attachment in clear, conspicuous language. Defs.' App. to Mot. for Summ. J. [60-4] at 9-10. Thus, even assuming that Blue Hawaiian did not receive a copy of the attachment at the time of signing, it is bound by the warranty disclaimer and limitation of liability provisions. In accordance with *Lyon Financial*, the Court presumes that Chevalier, a sophisticated party in a multimillion dollar transaction, read and understood the language that incorporated the terms and conditions into the agreement that he signed. Thus, the limited warranty and liability disclaimer apply to Blue Hawaiian.

### B. The Warranty Disclaimer and Limitation of Liability
### Provisions Bar Blue Hawaiian's Claims

AEC argues that all of the causes of action Blue Hawaiian asserts and types of damages it seeks fall within the scope of the warranty disclaimer and limitation of liability provisions in the terms and conditions attachment. Thus, AEC asserts that the helicopter purchase agreement bars all of Blue Hawaiian's claims.

The Court turns first to Blue Hawaiian's breach of warranty claims, both express and implied.[4] Blue Hawaiian cannot recover for breach of an express warranty, as the only express warranty contained in the agreement expired more than four years before it filed this action. It cannot recover for breach of an implied warranty, as the helicopter purchase agreement incorporated the terms and conditions attachment, which clearly and conspicuously disclaimed any implied warranties, including warranties of merchantability and fitness for a particular purpose. *See* TEX. BUS. & COM. CODE ANN. § 2.316(b); *Dewayne Rogers Logging, Inc. v. Propac Indus.*, 299 S.W.3d 374, 390 (Tex. App. – Tyler 2009, no pet. h.) ("Because the disclaimers complied with the Texas Business and Commerce Code and were communicated before completion of the sale, they were effective.").

---

[4]Blue Hawaiian claims that AEC sold the helicopter "pursuant to a written agreement which contain[s] various express and implied warranties, including but not limited to warranties of merchantability, warranties of freedom from defects and warranties of fitness for intended use." Compl. at 11. In fact, the helicopter purchase agreement contains one express warranty, which specifically limits AEC's liability for alleged defects to repair or replacement of the affected parts. Defs.' App. to Mot. for Summ. J. at 12 [60-4]. This warranty expired at the earlier of 1000 flying hours or 24 months after the date of delivery of the helicopter, in this case August 6, 2001. *Id.* at 12.

Next, the Court turns to Blue Hawaiian's tort claims.  The limitation of liability provision in the helicopter purchase agreement protects AEC from "any obligation, liability, right, claim or remedy in contract or tort, including product liabilities based on strict liability or negligence, actual or imputed," except as allowed under the express warranty.  A limitation of liability provision such as this is enforceable in Texas, "unless the agreement is unconstitutional, violates statutory law, or is against public policy." *In re Ghidoni*, 99 Fed. App'x 517, 519 (5th Cir. 2004) (citing *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex. 1974) (holding that parties may limit liability for future negligence)); *see Ely v. General Motors Corp.*, 927 S.W.2d 774, 781 (Tex. App. – Texarkana 1996, writ denied) (same); *Valero Energy Corp. v. M.W. Kellogg Const. Co.*, 866 S.W.2d 252 (Tex. App. – Corpus Christi 1993, writ denied).  In evaluating whether such a provision is unconscionable or against public policy, "courts generally consider the entire atmosphere in which the agreement was made, the bargaining process the parties went through, and whether there is such a disparity in bargaining power between the parties that one party is forced to agree to the exculpatory provision." *Mireles v. Tejas Appraisal & Inspection Co.*, Civil Action No. 04-06-00582, 2007 WL 1826074, at *1 (Tex. App. – San Antonio 2007, no pet.) (citing *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex. App. – Fort Worth 2005, no pet.)).

Blue Hawaiian makes no showing – and the Court sees no evidence – of procedural or substantive unconscionability, disparate bargaining power, or violations of public policy with respect to this disclaimer.  Like the rest of the clause at issue, the limitation of liability provision is conspicuous, written in bold, capital letters.  Defs.' App. to Mot. for Summ. J.

ORDER – PAGE 10

[60-4] at 12.   It clearly exculpates AEC from liability for both negligence and product liability.   *Id.*   Moreover, the negotiation process involved two sophisticated entities bargaining for a commercial product.   Thus, the Court finds that the limitation of liability provision in the helicopter purchase agreement applies to Blue Hawaiian and bars its tort claims.

In addition, the helicopter purchase agreement limits Blue Hawaiian's liability for damages of any type other than repair or replacement costs, including incidental or consequential damages.   *Id.* at 12.   In Texas, a disclaimer such as this one is enforceable in the context of commercial goods.   Under the Texas Business and Commercial Code, a seller may limit consequential damages, including loss of use and injury to person or property, as long as the limitation is not unconscionable.   TEX. BUS. & COM. CODE § 2.719(c).   Although a disclaimer of personal injury damages[5] is *prima facie* unconscionable in the context of consumer goods, it is not where the product is commercial in nature.   *Id.*   Again, there is no evidence of procedural or substantive unconscionability.   Thus, the Court finds that the limitation of liability provision is enforceable against Blue Hawaiian as it relates to the remedies it may pursue against AEC.

Because the warranty disclaimer and limitation of liability provisions in the helicopter purchase agreement bar the causes of action Blue Hawaiian asserts and the damages that it

---

[5]Blue Hawaiian does not seek personal injury damages, *per se*, but rather reimbursement for various settlement amounts it has negotiated with the parties injured in the helicopter crash.   The Court is unaware of the details of those settlements, including how much of each is devoted to personal injury damages.

seeks, the Court finds that its claims against AEC fail. Therefore, the Court grants summary judgment in favor of AEC on all of Blue Hawaiian's claims. The Court now turns to Blue Hawaiian's claims against Eurocopter.

### IV. ALL OF BLUE HAWAIIAN'S WARRANTY CLAIMS AND SOME OF ITS TORT CLAIMS AGAINST EUROCOPTER FAIL

Eurocopter argues that all of Blue Hawaiian's breach of warranty and some of its tort claims fail as matter of law. The Court agrees. First, the Court finds that the Texas Business and Commerce Code's four year-statute of limitations bars Blue Hawaiian's breach of warranty claims. Second, the Court finds that the economic loss rule bars any recovery in tort for damage to the helicopter.

### A. The Texas Business and Commerce Code's Four-Year Statute of Limitations Bars Blue Hawaiian's Warranty Claims

In general, the Texas Business and Commerce Code requires an aggrieved party to file suit on breach of warranty claims "within four years of delivery, regardless of when the buyer discovers defects in the goods." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 92 (Tex. 2004) (citing TEX. BUS. & COM. CODE ANN. § 2.725(a) (Vernon 1994)). "This absolute limitation period was intended to provide a uniform date of accrual beyond which sellers need not worry about stale warranty claims, or retain records to defend against them." *Id.* at 92. Under this provision, Blue Hawaiian's warranty claims accrued on June 20, 2001, the date it received the helicopter. The claims expired four years later, on June 21, 2005, two and a half years before Blue Hawaiian filed this suit in January

ORDER – PAGE 12

2008.[6]  Thus, the Court finds that the statute of limitations established in Section 2.725 of the Texas Business and Commerce Code bars Blue Hawaiian's breach of warranty claims against Eurocopter.[7]  The Court turns to Blue Hawaiian's tort claims against Eurocopter.

### B. The Economic Loss Doctrine Bars Blue Hawaiian's Tort Recovery for the Loss of the Helicopter

"The acts of a party may breach duties in tort or contract alone or simultaneously in both." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991); *see Memorial Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland GmbH*, 524 F.3d 676, 678 (5th Cir. 2008) (citing *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App. – Houston [14th Dist.] 2000, no pet.)).  In order to determine whether a plaintiff may recover in tort, contract, or both, courts evaluate the nature of the plaintiff's injury.  *DeLanney*, 809 S.W.2d at 494-95; *see Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  Under the economic loss rule, "[w]hen the only loss or damage is to the subject matter of the

---

[6]Section 2.725(b) of the Texas Business and Commerce Code establishes an exception to the general rule: "[W]here a warranty explicitly extends to future performance fo the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." TEX. BUS. & COM. CODE § 2.725(b); *see PPG Indus.*, 146 S.W.3d at 92-93.  The Court need not consider whether this exception applies in this case.  Even if the helicopter purchase agreement's two-year "repair or replacement" warranty fell within the scope of the exception and therefore extended the limitations period by two years, the period would have expired before Blue Hawaiian filed its breach of warranty claims.

[7]This analysis applies to AEC with equal force.  In the alternative of its finding that the helicopter purchase agreement bars Blue Hawaiian's warranty claims against AEC, the Court grants summary judgment in favor of AEC on this ground.

ORDER – PAGE 13

contract, the plaintiff's action is ordinarily on the contract."[8] *DeLanney*, 809 S.W.2d at 494. In other words, a plaintiff cannot recover in tort for economic losses that are recoverable in a breach of contract or breach of warranty claim. *Id.* "The rationale behind the rule is that contract law ... [is] expressly designed to deal with disappointed economic expectations and, therefore, the recovery of economic loss." *Century Prods. Co. v. COSCO, Inc.*, Civil Action No. 3:00-CV-800, 2001 WL 1577607, at *2 (N.D. Tex. Dec. 6, 2001) (quoting R. Joseph Barton, Note, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentations Claims*, 41 Wm. & Mary L.Rev. 1789, 1789 (2000)).

In the context of an allegedly defective product, the economic loss rule bars negligence and strict liability claims "brought to recover economic losses against the manufacturer or seller of a defective product where the defect damages only the product and does not cause 'personal injury' or damage to 'other property.'" *Pugh v. General Terrazo Supplies, Inc.*, 243 S.W.3d 84, 91 (Tex. App. – Houston [1st Dist.] 2007, pet denied).[9] This

---

[8]The economic loss rule applies even though Blue Hawaiian and Eurocopter are not in contractual privity. *See City of Alton v. Sharyland Water Supply* Corp., 277 S.W.3d 132, 152 (Tex. App. – Corpus Christi, 2009, pet. filed) (op. on reh'g); *Sterling Chem., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex. App. – Houston [14th Dist.], 2007, pet. denied).

[9]*See Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 312-13 (Tex. 1978) ("In transactions between a commercial seller and commercial buyer, when no physical injury has occurred to persons or other property, injury to the defective product itself is an economic loss governed by the Uniform Commercial Code."); *Equistar Chems., L.P. v. Dresser-Rand Co.*, 123 S.W.3d 584, 587 (Tex. App. – Houston [14th Dist.] 2003), *overruled on other grounds*, 240 S.W.3d 864 (Tex. 2007) ("In transactions between commercial buyers and sellers, if damage occurs only to the product that passed between them, the claim is one for economic loss and must be brought on the

case presents a more complex issue. Here, the helicopter accident caused personal injury to the pilot and passengers on board and, according to Blue Hawaiian, damaged an engine it leased and installed in the helicopter that constituted "other property." Because the injury extends beyond the allegedly defective product itself, Blue Hawaiian contends that the economic loss rule does not apply at all. Thus, Blue Hawaiian asserts that it can recover in tort, not only for the personal and "other property" injuries at issue, but also for the full market value of the helicopter.

The Texas Court of Appeals addressed this issue directly in *Murray*. 97 S.W.3d at 891-94. There, the plaintiffs' truck caught fire, causing damage to itself and to personal property contained inside. *Id.* at 890. As is the case here, the Texas Business and Commerce Code's four-year statute of limitations barred the plaintiffs' breach of warranty claims. *See* Tex. Bus. & Com. Code § 2.275. The plaintiffs sought to recover in tort instead, arguing that the economic loss doctrine did not bar their tort claims for the damage to the truck because "other property" was damaged in the fire. *Id.* at 892. The *Murray* court held that "the existence of a tort claim for loss of 'other property' does not transform a contract claim for damage to the product itself into a tort claim." *Id.* at 893 (citing *Mid Continent Aircraft Corp.*, 572 S.W.2d at 312-13 ("Distinguished from ... injury to other property, damage to the

_____

parties' contract; conversely, if there is physical injury to persons or 'other property' (that is, property other than the product itself), those claims may be brought in tort."); *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App. – Dallas 2003, no pet.) ("Where a product injures a consumer economically and not physically, the consumer may recover under the warranties provided by the Uniform Commercial Code, but not for strict liability in tort." (citations omitted)).

ORDER – PAGE 15

product itself is essentially a loss to the purchaser of the benefit of the bargain with the seller.... [T]he Legislature [has] provid[ed] that parties may rely on sales and contract law for compensation of economic loss to the product itself.")). Thus, while the plaintiffs could recover damages for the "other property" that was injured in the fire, they could not recover for the truck. *Id.* at 893.

Other courts have taken a similar approach. For instance, in applying the analogous economic loss rule in federal admiralty law jurisprudence, the Fifth Circuit held that recovery for loss of a product itself sounds in contract, not in tort, regardless of damage to other property. *McDermott, Inc. v. Clyde Iron*, 979 F.2d 1068, 1078 (5th Cir. 1992), *rev'd in part on other grounds*, 511 U.S. 202 (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 875-76 (1986)). Likewise, in *Saratoga Fishing Co. v. J.M. Martinac & Co.*, the Supreme Court held that plaintiffs could recover for loss of "other property," but not for loss of the defective product itself. 520 U.S. 875, 884-85 (1997). Finally, the Texas Court of Appeals explicitly adopted the *Murray* court's reasoning in *Equistar Chemicals*. 123 S.W.3d at 591 (reversed on other grounds).

With this precedent in mind, this Court holds that Blue Hawaiian may pursue its negligence and product liability claims for personal injury and alleged damage to "other property," but may not recover the value of the product itself – here, the helicopter – in tort.[10]

---

[10]This analysis applies to AEC with equal force. In the alternative of its finding that the helicopter purchase agreement bars Blue Hawaiian's warranty claims against AEC, the Court grants summary judgment in favor of AEC on this ground.

ORDER – PAGE 16

The Court now considers whether the Turbomeca replacement engine constitutes "other property," distinct from the helicopter.

### C. The Turbomeca Engine Is "Other Property"

Typically, the distinction between the "product itself" and "other property" is straightforward. *Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 503 (N.D. Tex. 2001). "The boundary between the subject matter of a contract and 'other property' when the former is a component of the latter, however, is not completely clear." *Id.* at 503-04.

Many courts hold that component parts included in an integrated product *at the time of sale* do not constitute "other property." *See American Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 144-45 (5th Cir. 1995); *Pugh*, 243 S.W.3d at 92. In other words, an "end user cannot recover in tort against the component manufacturer" where a component part causes damage to the product as a whole. *Pugh*, 243 S.W.3d at 92 (citing *Murray*, 97 S.W.3d at 891) ("Texas courts have rejected the argument that damage to a finished product caused by a defective component part constitutes damage to 'other property,' so as to permit tort recovery for damage to the finished product."); *see Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S.W.2d 308, 312-13 (Tex. 1978). "[S]ince all but the very simplest machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself." *East River*, 476 U.S. at 867 (quoting *N. Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324, 330 (Alaska 1981)). Likewise, some courts have disallowed recovery where a replacement part provided by the original manufacturer, rather than a component part, was the alleged source

of the damage.  *See, e.g.*, *Hininger v. Case Corp.*, 23 F.3d 124, 127 (5th Cir. 1994); *Sea-Land Serv., Inc. v. Gen. Elec. Co.*, 132 F.3d 149, 154 (3d Cir. 1998).

The issue presented here is more complex, however.  This case does not involve a component or replacement part that was installed inside a finished product at the time of sale or subsequently provided by the original manufacturer.  Rather, the engine was obtained from a wholly separate source, long after the initial transaction.  Moreover, Blue Hawaiian does not claim that the replacement part (here, the engine) damaged the finished product (here, the helicopter), but rather vice versa.  Thus, Blue Hawaiian is not seeking to recover in tort against a component part manufacturer, but rather seeks the value of the replacement part from the manufacturer of the whole product.  The parties do not cite and the Court is not aware of any Texas case law that squarely addresses this situation.  Consequently, the Court looks to the broad considerations that have guided the courts in determining whether a part constitutes "other property," distinct from the product as a whole.

When deciding whether a part is "other property," courts evaluate various factors.  For example, in the context of maritime law, the Supreme Court in *Saratoga* looked to *when* the property was added (there, a skiff, a fishing net, and spare parts) and held that the items included after the manufacturer placed the product in the stream of commerce constituted "other property."  *Saratoga*, 520 U.S. at 879; *see Nicor Supply Ships Assocs. v. Gen. Motors Corp.*, 876 F.2d 501 (5th Cir. 1989).  In *American Eagle*, the Fifth Circuit considered whether the parties bargained separately for the individual components at issue and held that, because they did not, the components were not "other property."  48 F.3d at 144-45 (citing

*Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925 (5th Cir. 1987)); *see also Pugh*, 243 S.W.3d at 92, 94. Finally, in *Alcan Aluminum*, a court in this district looked to whether the property damage at issue was foreseeable at the time the parties contracted for the product and held that, because it was, the property was not "other property." 133 F. Supp. 2d at 504-05 (collecting cases). The Court reasoned that "[t]he parties can protect themselves from foreseeable consequences in the contract, which is more efficient than tort remedies." *Id.* at 504.

Considering these factors, the Court holds that the Turbomeca engine constitutes "other property," distinct from the helicopter. As in *Saratoga*, the plaintiff added the property to the product after the manufacturer placed it into the stream of commerce. Unlike *American Eagle*, the parties here bargained separately for the individual components at issue. In fact, Blue Hawaiian leased the engine from a third party that was not involved in the original transaction at all. Finally, unlike *Alcan Aluminum*, it is unclear in this situation whether – at the time of the initial transaction – Blue Hawaiian and AEC could have foreseen the damage at issue. Therefore, Blue Hawaiian can recover for the value of the leased Turbomeca engine if its tort claims are successful.

## IV. BLUE HAWAIIAN'S REQUEST FOR DECLARATORY RELIEF FAILS

In addition to its breach of warranty, negligence, and strict products liability claims, Blue Hawaiian seeks declaratory relief. As the Court discussed in its March 30, 2009 order, Blue Hawaiian's fails to state a proper claim for declaratory judgment because it has a superior alternate remedy. *See* Order (March 30, 2009) at 2-3 [59].

ORDER – PAGE 19

## CONCLUSION

In sum, the Court holds that the aircraft purchase agreement bars all of Blue Hawaiian's claims against AEC. In addition, it holds that section 2.725(a) of the Texas Business and Commerce Code bars all of Blue Hawaiian's breach of warranty claims against Eurocopter. Finally, the Court holds that the economic loss rule limits Blue Hawaiian's tort recovery against Eurocopter for damage to the helicopter itself. Thus, the only claims that remain are Blue Hawaiian's tort claims against Eurocopter for the value of the leased Turbomeca engine and the amount of any settlements, judgments, payments, attorneys' fees, costs or expenses arising from third-party claims against Blue Hawaiian.

Signed April 8, 2010.

David C. Godbey
United States District Judge